## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **CCA AND B, LLC,** | |
| *Plaintiff,* | **SEALED** |
| v. | Civil Action No. |
| **3C-World Dropshipping Store,** *et al.*, | 1:24-cv-4616-TWT |
| *Defendants.* | |

## TEMPORARY RESTRAING ORDER, ASSET FREEZE ORDER, AND ORDER TO SHOW CAUSE

### INTRODUCTION

**THIS CAUSE** has come before the Court on Plaintiff CCA and B, LLC d/b/a The Lumistella Company's ("Plaintiff's") Motion for *Ex Parte* Temporary Restraining Order, Asset Freeze Order, and Order to Show Cause ("Motion for TRO") pursuant to Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1651(a), 15 U.S.C. § 1116, and 17 U.S.C. § 503. As discussed below, Plaintiff has satisfied the requirements for the issuance of an *ex parte* temporary restraining order and the additional relief requested.

## I.    APPLICABLE LEGAL STANDARDS

A court will issue a temporary restraining order where the requesting party demonstrates the following four factors: (1) it has a substantial likelihood of success on the merits; (2) the moving party will suffer irreparable injury if the order is not granted; (3) that the threatened injury to the plaintiff outweighs the harm the relief would inflict on the non-movant; and (4) entry of the order would serve the public interest. *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (per curiam); *Cathedral Art Metal Co. v. Divinity Boutique, LLC*, 2018 WL 566510 at *4 (N.D. Ga. 2018) (applying four-part test and granting preliminary injunction in a Lanham Act case).

Courts may issue a temporary restraining order without notice to the adverse party where the facts in an affidavit demonstrate the moving party will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition, and the movant's attorney certifies in writing the reasons why notice should not be required. Fed. R. Civ. P. 65(b)(1). Where a defendant's identity is known and notice can be feasibly given, the court may still grant an *ex parte* seizure order if providing notice to the defendant would render fruitless the further prosecution of the action. *AT&T Broadband v. Tech Communications, Inc.*, 381 F.3d 1309, 1319 (11th Cir. 2004). "The weight of

authority around the country appears to favor the granting of *ex parte* seizure orders in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article." *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, <u>548 F. Supp. 248, 249-50</u> (S.D. Fla. 1982) (citing numerous case). The justification for an *ex parte* seizure order is even more compelling where a significant amount of evidence pertaining to the counterfeiting activity is in electronic form, and therefore subject to quick, easy, and untraceable destruction by the Defendants. *Dell Inc. v. BelgiumDomains, LLC*, <u>2007 WL 6862341</u> at \*2 (S.D. Fla. 2007); *see also Chanel, Inc. v. Chanel255.ORG, et al.*, <u>2012 WL 12845630</u> at \*5 (S.D. Fla. 2012). Both the Copyright Act and Lanham Act provide for temporary and permanent injunctive relief. *See* <u>17 U.S.C. § 502(a)</u> ("[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions . . . ."; <u>15 U.S.C. § 1116(a)</u> ("[t]he several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions . . . .").

A request for permanent injunctive relief and disgorgement of the defendant's profits from counterfeiting pursuant to <u>15 U.S.C. § 1117</u>, as well as a request for an award of attorney's fees, are requests for relief in equity. Requests for equitable relief invoke the court's inherent equitable powers to order

preliminary injunctive relief, including an asset freeze, in order to assure the availability of permanent relief. *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995). Such asset freezes are particularly appropriate against sellers of counterfeit goods who are likely to hide their ill-gotten profits if their assets are not seized. *Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

## II.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court, having reviewed the Plaintiff's Motion for TRO, Memorandum, and supporting declarations and evidence, makes the following findings of facts and conclusions of law:

### A.    Plaintiff's Trademarks and Copyrights.

1)    Plaintiff is the creator and owner of the well-known THE ELF ON THE SHELF brand of products, including plush dolls, books, related accessories, and films.

2)    Plaintiff has adopted, used, and registered various trademarks in connection with its plush dolls, books, related accessories, and films, including the following ("Plaintiff's Marks"):

| Mark | U.S. Federal Reg. Nos. |
|---|---|
| THE ELF ON THE SHELF | 5020389, 5276920, 5323651, 4813953, 4626171, 3533459 |
| | 5114629, 3553223 |
| ELF PETS | 4638594, 4998931 |
| ELF MATES | 6357662 |
| | 6357660 |
| | 4823340, 4663876 |
| | 3585508, 4604772, 5128737 |

| | |
|---|---|
| | 4796557, 4681925 |
| | 5323653 |
| | 4671823 |
| | 4681926 |
| CLAUS COUTURE COLLECTION | 3742223 |
| | 5323649 |
| | 3749772 |

3)    Plaintiff is the owner of all right, title, and interest in and to the copyrights to numerous copyrightable works including ("Copyrighted Works"):

| Title of Work | U.S. Reg. No. |
|---|---|
| VA 1-638-505 | The Elf on the Shelf Doll |
| VA 1-698-498 | The Elf Sitting on the Shelf |
| VA 1-900-888 | The Elf on the Shelf - Boy Light Doll |
| VA 1-931-845 | The Elf on the Shelf - 2012 Girl Light |
| VA 1-901-099 | The Elf on the Shelf - Girl Light Doll |
| VA 1-900-890 | The Elf on the Shelf – Girl Dark Doll |
| VA 1-901-096 | The Elf on the Shelf - Boy Dark Doll |
| TXu 1-240-474 | The Elf on the Shelf A Christmas Tradition |
| TX 6-406-613 | The Elf on the Shelf A Christmas Tradition |
| VA 1-698-499 | The Elf on the Shelf A Christmas Tradition Illustrations |
| VA 1-931-144 | Elf Pets: A Reindeer Tradition Plush Doll |
| TX 8-427-094 | Elf Pets: A Reindeer Tradition 2014 – Text and Illustrations |
| TX 8-427-149 | Elf Pets: A Reindeer Tradition 2016 – Text and Illustrations |
| VAu 1-183-848 | Elf Pets: A Reindeer Tradition – Illustrations |
| VA 2-090-486 | Elf Pets: A Reindeer Tradition – Packaging Design |
| TXu 1-910-409 | Elf Pets A Reindeer Tradition – Text |
| VA 2-335-859 | Claus Couture Collection 2022 – Elf Care Hero |
| VA 2-335-853 | Claus Couture Collection 2022 – Groovy Greetings Hoodie |
| VA 2-328-190 | Claus Couture Collection 2022 – Karate Kicks Set |
| VA 2-329-444 | Claus Couture Collection 2022 – Pink Sparkle Party Dress |

| VA 2-329-464 | Claus Couture Collection 2022 – Snowy Nights PJs |
| VA 2-329-440 | Claus Couture Collection 2022 – Wonderland Onesie |
| VA 2-328-360 | Claus Couture Collection 2022 – Elf on the Shelf and Elf Pets Dress Up Set |
| VA 2-354-899 | Claus Couture Collection 2022 – Starry Night Set |

4)     Plaintiff owns valid copyright registrations for each of the Copyrighted

Works.

**B.     Defendants' Advertising and Sale of Counterfeit and Infringing Works.**

5)     Each Defendant is believed to be a non-U.S. entity, association, or

individual, located in China or elsewhere in Asia, each of whom sells, offers for

sale, distributes, and/or advertises goods through its virtual storefronts on various

e-commerce marketplaces, such as Alibaba, AliExpress, Amazon, DHGate, eBay,

Etsy, Joom, Printerval, Temu, Walmart, and Wish (each a "Marketplace" and

collectively the "Marketplaces").

6)     Each Defendant is advertising and offering for sale counterfeit

versions of one or more of Plaintiff's Copyrighted Works or goods using or

bearing counterfeit copies of at least one of Plaintiff's Marks, is using a counterfeit

of at least one of Plaintiff's Marks or Copyrighted Works in its listings for non-

genuine copies of Plaintiff's goods, or is using a confusingly similar trademark to one of Plaintiff's Marks in the marketing and sale of its goods through its virtual storefront(s) on the Marketplaces ("Counterfeit Products"). See Exhibit C to Plaintiff's Complaint.

7)    Each Defendant has offered Counterfeit Products for sale throughout the United States, including in Georgia. Each Defendant is willing to engage in commercial transactions with residents of the United States and ship Counterfeit Products to the United States.

8)    Each Defendant also accepts payment for its goods in U.S. dollars through, for example, a variety of payment processors, banks, escrow services, money transmitters, the Marketplaces themselves, and other companies that engage in the processing or transfer of money of or on behalf of Defendants by virtue of their operation of virtual storefronts on any of the Marketplaces (collectively referred to hereafter as, "Financial Institutions").

9)    Defendants are subject to the personal jurisdiction of this Court pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure, and exercising jurisdiction over Defendants is consistent with the United States Constitution and its laws. Based on the facts set forth above, it is reasonable for Defendants to expect that they may be sued in the United States. *U.S. S.E.C. v. Carrillo*, 115 F.3d

1540, 1542-47 (11th Cir. 1997) (holding court had personal jurisdiction over foreign corporation where defendant placed ads for securities in two airlines' in-flight magazines, mailed offering materials directly to U.S. investors, and maintained U.S. bank accounts to receive payment from investors.); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355-58 (11th Cir. 2013) (affirming jurisdiction over non-resident who sold counterfeit products through fully-interactive website).

10)    Plaintiff has never authorized any of the Defendants to use any of Plaintiff's Marks on or in the advertising, promotion, or sale of any goods in the United States.

11)    Plaintiff has never authorized any of the Defendants to reproduce, import, or distribute copies of any of Plaintiff's Copyrighted Works in the United States.

12)    Plaintiff has established that the Counterfeit Products offered for sale by Defendants are not genuine. Defendants are using one or more of Plaintiff's Marks to advertise, market, and sell their Counterfeit Products. Additionally, many of the Counterfeit Products are substantially similar to Plaintiff's Copyrighted Works.

13)     Plaintiff has established that it is substantially likely to succeed on the merits of its copyright infringement claims:

    a)     Plaintiff owns valid copyrights for the Copyrighted Works;

    b)     Defendants are offering for sale and selling reproductions of one or more of the Copyrighted Works, or works that are derived from the Copyrighted Works;

    c)     Plaintiff has not authorized Defendants to reproduce, distribute, publicly display, or create derivative works of any of its Copyrighted Works; and

    d)     The Counterfeit Products are substantially similar to one or more of the Copyrighted Works.

14)     Plaintiff has established that it is substantially likely to succeed on the merits of its trademark infringement claims:

    a)     Plaintiff owns valid federal trademark registrations for Plaintiff's Marks;

    b)     The Counterfeit Products that Defendants are advertising and offering for sale are not genuine;

    c)     Defendants are using spurious marks that are identical with, or substantially indistinguishable from, one or more of Plaintiff's Marks

11

or colorable imitations of Plaintiff's Marks in commerce on or in connection with the sale, offer for sale, distribution, and/or advertising of the Counterfeit Products;

d)    Defendants' use of Plaintiff's Marks or colorable imitations of Plaintiff's Marks is likely to cause consumer confusion, mistake, or deception as to the source or origin of the Counterfeit Products; and

e)    Alternatively and/or additionally, each Defendant is using in commerce a word, term, name, symbol, or device, or a combination thereof, or a false or misleading representation of fact on or in connection with its goods in a manner that is likely to cause confusion, or to cause mistake, or to deceive, as to the affiliation, connection, or association of each Defendant with Plaintiff, or as to the origin, sponsorship, or approval of each Defendant's goods or commercial activities by Plaintiff.

15)    Under 15 U.S.C. § 1116(a), Plaintiff is entitled to a rebuttable presumption of irreparable harm because Plaintiff is seeking a temporary restraining order or a preliminary injunction and has demonstrated a likelihood of success on the merits. As held in the preceding paragraph, Plaintiff has demonstrated a likelihood of success on the merits and is, therefore, automatically

entitled to a presumption of irreparable harm, thereby satisfying the second factor of the temporary restraining order and preliminary injunction analysis.

16) Even in the absence of the rebuttable presumption, Plaintiff has shown that it is likely to suffer irreparable harm if an injunction does not issue. The proliferation of counterfeit and/or infringing copies of Plaintiff's goods erodes the distinctiveness of Plaintiff's Marks and diminishes their value and associated goodwill. Because Plaintiff cannot control the quality of counterfeit and infringing goods, the sale of inferior counterfeit or infringing goods by Defendants will have a materially adverse effect on Plaintiff's business reputation and the goodwill associated with Plaintiff's Marks. This is sufficient to establish a likelihood of irreparable harm. *Noorani Trading Inc. v. Bijani*, 2017 WL 8292437 at *9 (N.D. Ga. May 4, 2017). The widespread and unauthorized use of Plaintiff's Marks in the marketing, offering for sale, and sale of counterfeit and/or infringing goods threatens the extensive goodwill associated with Plaintiff's business and Plaintiff's Marks, and will continue to cannibalize the sale of Plaintiff's genuine goods. There is a significant threat that Plaintiff will suffer irreparable harm without an injunction. *Mud Pie, LLC v. Deck the Halls, Y'all, LLC*, No. 17-2789, 2017 WL 8942387 at *3 (N.D. Ga. 2017); *Ferrellgas Partners, L.P*, 143 Fed. Appx. 180, 190 (11th Cir. 2005); *Crossfit, Inc. v. Quinnie*, 232 F. Supp.3d 1295, 1316 (N.D. Ga.

2017) ("The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods.").

17)    It is likely that Plaintiff will suffer immediate and irreparable loss, damage, or injury unless Plaintiff's request for *ex parte* relief is granted:

      a)    It is likely that Defendants will continue to sell Counterfeit Products through their virtual storefronts on the Marketplaces in the absence of the requested TRO;

      b)    As a result, it is likely that consumers will continue to be misled, confused, and disappointed by the quality of these goods, thereby significantly and irreparably damaging Plaintiff's valuable goodwill; and

      c)    Additionally, consumers may suffer actual physical harm if Defendants' Counterfeit Products fail to meet applicable product safety requirements or federal or state labeling requirements; and

      d)    Plaintiff will continue to suffer lost sales of genuine goods as the result of the lower-cost Counterfeit Products offered for sale by Defendants.

18)     The balance of harms favors Plaintiff. If the TRO is denied, Plaintiff will continue to suffer the above-mentioned irreparable harm to its reputation and the goodwill associated with Plaintiff's Marks. On the other hand, enjoining Defendants from selling counterfeit and/or infringing goods poses little to no risk of damaging the goodwill, if any, associated with the Defendants. Any harm Defendants may suffer is purely monetary and is therefore compensable, unlike the harm that Plaintiff will continue to suffer.

19)     Granting Plaintiff a TRO will also be in the public's interest. It will remove from the stream of commerce counterfeit and infringing goods that do not meet Plaintiff's quality control requirements, thereby preventing further consumer confusion, mistake, or deception. Additionally, granting the TRO will help prevent consumer injury by preventing the sale of potentially dangerous Counterfeit Products that do not meet United States safety standards to consumers in the United States and elsewhere.

20)     Plaintiff has further demonstrated that this TRO should be granted *ex parte*. If Plaintiff provides Defendants notice of its application for TRO, Defendants are likely to delete their existing virtual storefronts on the Marketplaces, transfer any ill-gotten gains away from the Marketplaces, hide their identities, cover up evidence of their infringing activities, and shield their ill-gotten

assets in a concerted effort to avoid liability and prevent Plaintiff from achieving a

meaningful recovery, including financial compensation and permanent injunctive

relief. Foreign parties that sell Counterfeit Products online often "disappear" when

notified that they are being pursued.

21)    Granting Plaintiff an *ex parte* TRO is also in the public's interest. It

will prevent consumer confusion in the marketplace and remove from the stream of

commerce Counterfeit Products of unknown and likely inferior quality and

composition, thereby preventing consumer harm, confusion, mistake, and

deception.

22)    Plaintiff has requested a permanent injunction and recovery of

Defendants' ill-gotten profits from their sale of Counterfeit Products pursuant to 15

U.S.C. § 1117(a) and 17 U.S.C. § 504.

23)    By requesting equitable relief, Plaintiff has invoked this Court's

inherent equitable powers to order  preliminary  relief, including an asset freeze, in

order  to assure  the  availability  of permanent relief. *Levi Strauss & Co. v. Sunrise*

*Intern. Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (citing *Fed. Trade Comm'n*

*v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir. 1984)).

24)    Defendants are likely to destroy evidence of their counterfeiting

activities, such as evidence regarding their virtual storefronts and payment

processing histories on the Marketplaces and other financial institutions, as well as hide and/or transfer any ill-gotten proceeds from the sale of Counterfeit Products, unless those assets are frozen or otherwise restrained.

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for *Ex Parte* Temporary Restraining Order, Asset Freeze Order, and Order to Show Cause is **GRANTED** as follows:

1)      Each Defendant (as reflected on the attached Exhibit A), its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order is hereby ordered to immediately and temporarily:

> a)      Cease or refrain from manufacturing, advertising, offering for sale, selling, distributing, destroying, selling off, transferring, or otherwise disposing of any Counterfeit Products or products that are substantially similar to any of Plaintiff's Copyrighted Works;
>
> b)      Cease manufacturing, advertising, offering to sell, selling, reproducing, or distributing (i) any products bearing Plaintiff's Marks or any confusingly similar trademarks, (ii) any products that are substantially similar to any of the Copyrighted Works, other than

genuine products manufactured or distributed by Plaintiff or its authorized manufacturers and distributors;

c)    Cease or refrain from destroying, selling off, transferring, or otherwise disposing of any documents, electronically stored information, or financial records or assets of any kind relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any Counterfeit Products;

d)    Cease or refrain from using Plaintiff's Marks, or any confusingly similar trademarks, on or in connection with any virtual storefront that any Defendant may own, operate, or control on any Marketplace;

e)    Cease or refrain from any and all use of Plaintiff's Marks, or any confusingly similar trademarks, as metatags, on any webpage (including the title of any web page), in any advertising links to other websites, from search engines' databases or cache memory, or any other form of use of such terms that are visible to a computer user or serves to direct computer searches to virtual storefronts registered, owned or operated by any Defendant on any Marketplace; and

f)      Cease or refrain from altering, disabling, closing, or transferring ownership of any virtual storefront on any Marketplace during the pendency of this Action, or until further Order of the Court.

2)      For the duration of this suit, each Defendant must preserve all documents and electronically stored information arising from or related to its sale, offering for sale, advertising, or promotion of Counterfeit Products through its virtual storefronts located on the Marketplaces.

3)      All Financial Institutions that receive actual notice of this Order shall immediately attach and freeze all funds in any accounts owned, controlled, utilized by, or associated with Defendants and otherwise prohibit the transfer of any funds out of any such accounts and divert any frozen funds and any additional funds that may be transferred into the accounts into a holding account at the Marketplace or the respective Financial Institution for the trust of the Court, with such frozen funds and/or holding accounts being held, maintained, and/or located exclusively within the United States.

4)      Within seven (7) days of receiving actual notice of this Order, all Financial Institutions shall provide a report to Plaintiff for each Defendant having any account with any Financial Institution, the report to include, at a minimum, the following information:

a)      Legal name and email address of each Defendant;

b)      Current account balances and amount of funds attached, frozen, and being held in trust pursuant to this Order; and

c)      Identity of all financial accounts linked to or associated with each Defendant's account associated with the virtual storefronts on the Marketplaces, or from or to which funds have been transferred from the attached accounts, including the name of the Financial Institution, account numbers, routing numbers, and other relevant data to allow Plaintiff to seek further application of this Order.

5)      No funds restrained by this Order shall be transferred or surrendered by any Financial Institution or Marketplace for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of the Court.

6)      Upon receipt of notice of this Order, each Marketplace on which a Defendant maintains a virtual storefront or account is ordered to immediately:

a)      Provide to Plaintiff the name and email address of each Defendant having an account or store on the Marketplace;

b)      Freeze all funds held or received by the Marketplace for any Defendant's benefit; and

> c)    Disable each Defendant's virtual storefronts on the
> Marketplaces and any accounts associated with each Defendant and
> cease providing any services to Defendants.

7)    Plaintiff may notify the Marketplaces and Financial Institutions of this Order by electronic means, including by electronic mail.

8)    Pursuant to this Court's discretion, Plaintiff shall not presently be required to post a bond or other security. *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005). However, any Defendant may appear and immediately challenge this portion of the Order by providing the Court with a reasonable estimation of its potential lost sales, along with supporting documentation sufficient to allow the Court to decide what an appropriate amount of surety would be. Plaintiff will then have one (1) week in which to file a response.

9)    This Order shall remain in effect until the date for the hearing on Plaintiff's motion for an order to show cause why a preliminary injunction should not issue or until such further date as set by the Court or stipulated to by the parties.

10)    This Order shall apply to Defendants, their associated virtual storefronts on the Marketplaces, and any other websites, domain names, seller

identification names, e-commerce stores, or Financial Institution accounts which are being used by Defendants for the purpose of advertising, offering for sale, and selling any Counterfeit Products at issue in this action and/or unfairly competing with Plaintiff.

11)     Any Defendant or Financial Institution account holder may petition the Court to modify the asset restraint set out in this Order.

12)     A hearing is set before this Court in the United States Courthouse located at 75 Ted Turner Drive SW, Atlanta, Georgia 30303, Courtroom 2108, on **December 3, 2024** at **2:00 PM**, at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same, and at which time the Court will hear argument on Plaintiff's requested preliminary injunction, and Defendants shall appear and show cause why said preliminary injunction should not issue.

13)     **<u>SERVICE BY ALTERNATE MEANS</u>:** After Plaintiff's counsel has received confirmation that the Financial Institutions and/or Marketplaces have restrained Defendants' funds as directed herein, Plaintiff shall serve copies of the Complaint, Motion for TRO, and this Order on each Defendant by electronic mail using email addresses provided by the Marketplaces, Financial Institutions, or

Defendants themselves or by other electronic means reasonably calculated to provide notice to all Defendants.

14)    Any response or opposition to Plaintiff's motion for preliminary injunction must be served on Plaintiff's counsel by November 27, 2024, and filed with the Court, along with Proof of Service. Plaintiff shall file any reply memorandum prior to the hearing set for December 3, 2024. The above dates may be revised upon stipulation by all parties and approval of this Court.

**Defendants are on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1651(a), and the Court's inherent authority**.

This Temporary Restraining Order expires within fourteen (14) days unless the hearing on Plaintiff's motion for an order to show cause why a preliminary injunction should not issue cannot be heard within such time, in which case the Order shall remain in effect until the date of the hearing.  This Temporary Restraining Order may be extended for good cause.

**SO ORDERED** this __25th__ day of ___October_____, 2024.

_____

**UNITED STATES DISTRICT JUDGE**

## EXHIBIT A

## LIST OF ALL NAMED DEFENDANTS SUBJECT TO ORDER

| |
|---|
| 3C-World Dropshipping Store |
| 1999 Drop Shipping Store |
| 1999 Store |
| ABXMAS Holiday Decor Store |
| Ali-KittenBaby Toy Store |
| All Categories Wholesale Store Store |
| Anhui Yun Wolin Import And Export Trade Co., Ltd. |
| anxiaoaojiaodianzishangwuyouxiangongsi |
| aoaojiaobaihuopu |
| Baby Lucky Store |
| Babydoll Store |
| Barnewa Toys Store |
| BEST DISCOUNTED SALES SHOP LLC |
| Cartoon Doll Mascot Costume Store |
| CHAIRUL FIRMANSYAH |
| Children doll clothes gift &DIY NOOOSA jewelry |
| Chu Cheng Store |
| Coser World Store |
| Cosy House Store |
| CX-52 Store |
| Delicate Trinket Store |
| Design Clothes For Your Doll Store |
| Dongguan Join Success Toy & Gift Co., Ltd. |
| Dropshipme Professional Store |
| Dropshipping1999 Store |
| FCOT Store |
| Fujian Quanzhou Boheng Textile Co., Ltd. |
| fursuit-118 Store |
| Gemma Cos Store |
| Global Mascot Costume Store |
| Growth Garden Store |
| Guangdong Paksen Display Ltd. |

| |
|---|
| guangxixinnongfugongyinglianguanliyouxiangongsi |
| Guangzhou Funtoys Co., Ltd. |
| Guangzhou Grace Technology Co., Ltd. |
| Guangzhou Mascot Trading Co., Ltd. |
| Guangzhou Rilong Toys Co., Ltd. |
| GUANGZHOU SIKEMI TECHNOLOGY CO., LTD |
| guangzhouhuitanmaoyiyouxiangongsi |
| Guangzhoushi Zhitaojin Dianzishangwu Youxiangongsi |
| GuangzhousikemiTechnologyCo.Ltd |
| Guest Store |
| Guigang Younger Craftwork Co., Ltd. |
| haikoushijinmaiheshangmaoyouxiangongsi |
| Handmade Doll Clothes Shop Store |
| Happiness Castle Store |
| Hefei We-Do Party Items Co., Ltd. |
| Henan Yokids Group |
| Hesper Import and Export(Suzhou)Co.,Ltd |
| High-class Dropshipping Store |
| Hot Mascot Costume Store |
| Huizhou Arison Technology Co., Ltd. |
| Huizhou Babidou Toys And Gifts Co., Ltd. |
| Huizhou Xinchengxin Toys & Gifts Co., Ltd. |
| Iland Trading Co., Ltd. |
| Instruments Tools Store |
| Jiangxi St.Pauli Decor And Gift Co.,Ltd |
| JINDOOR HOME Store |
| Jingjijishukaifaqufucishangmaodiangerenduzi |
| Jinhua Hairong Import And Export Co., Ltd. |
| Keep-Real World Store |
| LetUWell Store |
| LOL Mascot costume (Quality ^_^) Store |
| LPZIHJY Store |
| Luckdoll Store |
| Mascot Costume Doll Store |
| Mascot Costume Show Shop Store |
| MDGJ Store |

| |
|---|
| Medieval Store |
| Meizhou Fenghan Trading Co., Ltd. |
| Meizhou Zhihang E-commerce Co., Ltd. |
| Mizuki Nianhua Store |
| MOJOYCE Speciality Store |
| MTB Bike Sports And Festival Shop Store |
| MUYANG2003 Store |
| MYPANDA Cactus Toy Store |
| New Style Mascot Costume Store |
| Nike Store |
| Ningbo Tofoam Stationery Co., Ltd. |
| Nolan Li Mascot Store |
| Novelty Mascot Costumes Store |
| Old Eazin's Store |
| partytime costume factory |
| Porschen Store |
| Professional Sporting Store |
| Pursuit of Happyness |
| Putianshizhuanfengkejiyouxiangongsi |
| Quanzhou Minshan Import & Export Trading Co., Ltd. |
| Quanzhou Onen Ecommerce Co., Ltd. |
| Quanzhou Victor Import & Export Co., Ltd. |
| Shantou Leibosen Culture Co., Ltd |
| Shantou Nanshen Crafts Industry Co., Ltd. |
| Shantou Xinze Craft Co., Ltd. |
| Shenzhen Douluo E-Commerce Co., Ltd. |
| Shenzhen Hailaideng Trade Co. Ltd |
| Shenzhen Shengming Yuanying Trading Co., Ltd. |
| Shenzhen Worth Buy Ltd., Co. |
| Shenzhen Xuanruihe Technology Ltd., Co. |
| Shenzhen Yhd Electronic Co., Ltd. |
| Shenzhenshiyuehailemaoyiyouxiangongsi |
| shijiazhuangjinmushangmaoyouxiangongsi |
| Shop2060.126 Store |
| Shop4842157 Store |
| Shop5008132 Store |

| |
|---|
| Shop5220002 Costume Store |
| Shop5783650 Store |
| Shop910559167 Store |
| Shop911061100 Store |
| Shop1102129013 Store |
| Shop1102840908 Store |
| Shop1102880163 Store |
| Shop1102993271 Store |
| Shop1103003033 Store |
| Shop1103402094 Store |
| Shop1103479256 Store |
| Shop1103518311 Store |
| Shop1103530204 Store |
| Shop1103533190 Store |
| Shop1103570193 Store |
| Shop1103612597 Store |
| Shop1103748282 Store |
| Shop1103859105 Store |
| Shop1103943078 Store |
| Shop1103947066 Store |
| Shop1104003382 Store |
| Shop1104003812 Store |
| Shop1104060120 Store |
| Shop1104079092 Store |
| Shop1104080193 Store |
| Shop1104095725 Store |
| Shop1104108787 Store |
| Shop1104118475 Store |
| Shop1104124708 Store |
| Shop1104129613 Store |
| Shop1104148081 Store |
| Shop1104152297 Store |
| Siniu 333 Store |
| Siniu One Store |
| SMARTOY Store |
| spirit001 Store |

| |
|---|
| SZ Daily Goods Store |
| WEI CAHUNG Store |
| Wuhan Chaofan Toys., Ltd. |
| Wuhan John Kids Toys Co., Ltd. |
| Wuwei 444 Store |
| Wuwei Wuwu Store |
| WuXiaoLi |
| Xiamen KERYON Import & Export Co., Ltd. |
| XiOng Store |
| Yangzhou Huanzhidou Toy Co., Ltd. |
| YINIU001 Store |
| Yiwu City Que Ang E-Commerce Firm |
| Yiwu Femtindo E-Commerce Co., Ltd. |
| Yiwu Fuya Commodity Co., Ltd. |
| Yiwu Goldenbell Giftcraft Co., Ltd. |
| Yiwu Jixu Import And Export Co., Ltd. |
| Yiwu Kaiding Electronic Commerce Co., Ltd. |
| Yiwu Lenora Trading Co., Ltd. |
| Yiwu Ruiquan E-Commerce Firm |
| Yiwu Ruoque Trading Co.,ltd |
| Yiwu Shineparty Handicrafts Co., Ltd. |
| Yiwu Wenrui Trade Co., Ltd. |
| Yiwu Xiaomeng Import And Export Co., Ltd. |
| YOLife Home Deco Official Store |
| yongjizhenchengbaihuoshanghang |
| yongjizhenchengbaiyhuoshanghang |
| Your PDR Store store |
| Yunzhongfu8055 Store |
| Zhengzhou Guancheng Hui District Xirun Department Store |
| ZWSISU Official Store |